**In re CORNERSTONE HEALTHCARE HOLDING GROUP, INC. and Highland Capital Management, L.P., Relators.**

No. 05–11–00634–CV.

Court of Appeals of Texas, Dallas.

Aug. 18, 2011.

Scott A. Brister, David P. Whittlesey, John S. Sheehan, Andrew Kurth LLP, Austin, Marc D. Katz, Aaron J. Epstein, Andrew Kurth LLP, Dallas, TX, for Relators.

Richard A. Rohan, Neal James Suit, Carrington, Coleman, Sloam & Blumenthal, LLP, Karen Gren Johnson, David Lawrence Horan, Andrew Omprakash Wirmani, Jones Day, Dallas, TX, Alistair B. Dawson, Marcos Rosales, Stephen Douglas Pritchett, Jr., Beck, Redden & Secrest, L.L.P., Houston, TX, for Real Party in Interest.

Before Justices BRIDGES, FITZGERALD, and MURPHY.

## OPINION

Opinion by Justice FITZGERALD.

Relators Cornerstone Healthcare Holding Group, Inc. ("Cornerstone") and Highland Capital Management, L.P. ("Highland") filed this mandamus proceeding after the trial court denied their motion to dismiss based on the parties' forum selection. We conclude the trial court abused its discretion in denying the motion and relators have no adequate remedy by appeal. We therefore conditionally grant the writ of mandamus.

### Background

Real party in interest MHC Holding Company ("Mariner") sold a chain of hospitals to CS Healthcare Holdco, LLC ("Holdco LLC"), for $161 million in the summer of 2005. The transaction was accomplished by the parties' execution of an Asset Purchase Agreement (the "APA").

As part of the transaction, Mariner received $151 million in cash and a $10 million promissory note (the "Note") from CS Healthcare Holdco, Inc. ("Holdco"), a wholly-owned subsidiary of Holdco LLC and a defendant in the suit below. Immediately after the closing of the APA, Holdco LLC assigned all of its rights and interest in the APA to Cornerstone, pursuant to an assignment and assumption agreement. Thus, Cornerstone became the owner of all the assets originally transferred by Mariner.

In 2007, Holdco and Cornerstone entered into a Restructuring and Support Agreement (the "Restructuring Agreement") with relator Highland, which had come to own more than $55 million of Cornerstone's debt. Pursuant to the Restructuring Agreement, ownership of the hospitals was transferred to Highland. Mariner was not a party to the Restructuring Agreement. The Note was identified in a schedule to the Restructuring Agreement as a material agreement into which Holdco had entered, but the debt created by the Note was not addressed by the Restructuring Agreement.

In 2010, Mariner sued Highland, Cornerstone, and Holdco, alleging a fraudulent transfer that left Holdco insolvent and unable to repay the Note. In its live petition, Mariner seeks the alternative remedies of avoidance of the 2007 restructuring transaction to the extent necessary to satisfy Mariner's claim for the $10 million owed by Holdco, or judgment "in the amount due under the [Note]" against either Highland or Cornerstone.

Cornerstone and Highland jointly filed a motion to dismiss the lawsuit on the basis of forum-selection clauses in the APA and the Note, both of which called for disputes to be resolved in New York County, New York. The trial court denied the motion. This original proceeding followed.

## The Forum–Selection Clauses

 In order to obtain mandamus relief, Cornerstone and Highland must show both that the trial court abused its discretion and that they have no adequate appellate remedy. *In re Prudential Ins. Co.,* 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding). Forum-selection clauses are generally enforceable and presumptively valid. *In re Laibe Corp.,* 307 S.W.3d 314, 316 (Tex.2010) (orig. proceeding). A trial court abuses its discretion when it does not properly interpret or apply a forum-selection clause. *Id.* Moreover, an appellate remedy is inadequate when a trial court improperly refuses to enforce a forum-selection clause; allowing the trial to go forward will simply vitiate the subject matter of an appeal, which is trial in the proper forum. *See In re AIU Ins. Co.,* 148 S.W.3d 109, 115 (Tex.2004) (orig. proceeding).

 Paragraph 12.11 of the APA, entitled "Consent to Jurisdiction," contains the following forum-selection clause:

> The parties hereto each hereby irrevocably submit to the exclusive jurisdiction of any state or federal court sitting in New York County, New York for the purposes of any suit, action or other proceeding arising out of or based upon this Agreement or the subject matter hereto brought by any other party hereto. Each party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court. . . .

The Note contains the following forum-selection clause:

> The execution, delivery and performance of this Note shall be governed by and construed in accordance with the laws of the State of New York. . . . Sections 12.11 (entitled "Consent to Jurisdiction")

and 12.12 (entitled "Waiver of Jury Trial") of the Asset Purchase Agreement shall apply in connection with any dispute under or enforcement of this Note. The parties disagree concerning which (if either) of these clauses is implicated by the current litigation, and they disagree as to the scope of the clause in the Note. They cast their issues differently, but the forum-selection issues before us come down to which clause is implicated by Mariner's suit and whether Mariner's suit is properly within the scope of the implicated clause.

As to the clause implicated, Cornerstone and Highland contend there is actually only one forum-selection clause and that the Note merely incorporates the APA's clause by reference. Thus, for the relators, the APA's clause is implicated by this action. Mariner, for its part, contends initially that neither clause is implicated in this case because its claims do not arise under the APA or the Note. However, if forum selection is implicated in this litigation, Mariner urges us to apply the Note's forum-selection clause. That clause, Mariner contends, was purposefully negotiated to be narrower than the APA's, because it envisions applying the APA's provision only "in connection with any dispute under or enforcement of" the Note. Mariner argues that if we apply the Note's clause, we will conclude—as Mariner does—that its lawsuit below is not subject to the forum-selection provision.

■ We are persuaded by relators' argument. Both sides acknowledge that the Note is tied to the APA. Indeed, Mariner asserts that "the Note and the APA were parts of a unified transaction." The Note itself states that it is "issued pursuant to, and in accordance with the terms of, that certain Asset Purchase Agreement...." Likewise, the APA includes the Note among its exhibits that were to be executed along with the APA. Settled law requires separate documents executed at the same time, for the same purpose, and in the course of the same transaction to be construed together. *See Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex.1984).

When we construe the forum-selection clauses in the Note and the APA together, two points cannot be ignored. First, the drafters incorporated the APA's clause—in its entirety—into the Note. Had they desired a separate clause with different underpinnings, they would have drafted such a clause. Second, the clauses select the same forum, i.e., New York County, New York. Thus, unlike most exercises in contract construction, this one is not based on conflicting provisions. Instead, viewing the clauses together underscores the parties' intention that litigation related to the unified transaction would occur in the same location.

■ As to the breadth of the two clauses, given their origins in the same transaction we see no reason to read restrictions into the Note's provision. Again, the Note was issued pursuant to the APA and incorporates the entirety of the APA's forum-selection clause. Thus, we conclude Mariner's claims fall within the intended forum selection of the parties so long as they qualify as "action[s] or proceeding[s] arising out of or relating to" the transaction. We conclude further that Mariner's fraudulent-transfer suit below does arise out of or relate to that transaction. Specifically, the suit arises out of or relates to rights Mariner possesses pursuant to the Note: the injury it claims is Holdco's inability to pay on the Note; its standing as a creditor will require proof of Holdco's debt created by the Note; and the remedies it seeks amount to repayment pursuant to the Note. Simply put, Mariner would have no right to complain of the Restructuring

Agreement except for its status as Holdco's creditor pursuant to the Note.

Mariner's lawsuit involves a dispute under the Note. Accordingly, the parties' single forum-selection clause applies to Mariner's claims. We conclude the parties agreed to litigate this matter in New York County, New York.

### The Right to Enforce Forum Selection

We have concluded the parties agreed to a single forum-selection clause and that this dispute is within the scope of that clause. We next address whether relators—who were not parties to the APA or the Note—have the right to enforce the forum-selection clause against Mariner.[1] Cornerstone and Highland asserted in their motion to dismiss that they were entitled to do so. Cornerstone based its right to enforce the clause on its status as assignee of Holdco LLC, which allowed Cornerstone to assert all of Holdco LLC's rights pursuant to the APA, including the Note that was appended to and made part of that agreement. *See Phoenix Network Tech. (Europe) v. Neon Sys., Inc.,* 177 S.W.3d 605, 620 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (contracting party's assignee can enforce contract's forum-selection clause). Mariner did not challenge Cornerstone's right to enforce the forum-selection clause in its response to the motion to dismiss below. Nor has it made any argument against Cornerstone's right to enforce the clause in this Court. Thus, the issue of Cornerstone's right to enforce forum selection is not before us.[2]

---

1. The parties sometimes use the term "standing" in this context of the right to enforce forum selection. *See, e.g.,* "But Mariner is wrong about Highland's standing." Relators' Reply Brief, p. 13. We avoid that term in this context because of the potential for confusion. The right to enforce a contractual agreement is a defensive issue for a contracting party, not a jurisdictional one. Unlike standing that is a component of subject matter jurisdiction, the right to enforce a contractual agreement can be waived. Moreover, we will not raise the issue in this Court—as we would an issue of subject matter jurisdiction—if it is not raised as an issue by the parties.

2. We disagree with the dissent's conclusion that Mariner challenged Cornerstone's right to enforce forum selection in the trial court. Mariner made an argument below concerning the scope of the Note's forum-selection clause. That argument asserted Cornerstone treated the Note's forum-selection clause as "non-existent" and stated Cornerstone had "not even tried" to establish a right to enforce it. Mariner's characterization is flawed substantively: Cornerstone does not treat the Note's forum-selection clause as non-existent. Instead, Cornerstone has consistently maintained that the Note merely incorporates by reference the forum-selection clause in the APA, as part of a unified transaction. Consistent with that analysis, Cornerstone asserts a right to enforce forum selection as assignee to the rights under the APA. Nevertheless, the dissent adopts Mariner's characterization of Cornerstone's argument and treats it as a challenge to Cornerstone's right to enforce the forum-selection clause in the Note. The dissent charges that "Cornerstone never asserted the right to enforce the Note, either below or in this proceeding." Given its theory of this issue, Cornerstone had no reason to contend it had a right, independently, to enforce the Note or its forum-selection clause.

Mariner raised three arguments below in response to the motion to dismiss: (1) neither forum-selection clause governs this dispute; (2) the forum-selection clause in the Note excludes this dispute; and (3) Highland is not entitled to dismissal because its only asserted basis for enforcing a forum-selection clause has been overruled. In this Court, Mariner argues: (1) the trial court did not abuse its discretion in overruling the motion to dismiss (addressing rules of contract construction); (2) the relators' arguments for a single clause are unconvincing; (3) the dispute is too remote to come under the 2005 forum-selection clause; and (4) Highland cannot enforce any forum-selection clause as a nonsignatory. Both times, Mariner unambiguously raised Highland's right to enforce forum selection, not Cornerstone's, as a specific issue in its briefing.

Even if Mariner's discussion below of the scope of the Note's forum-selection clause

 In the motion to dismiss, Highland asserted it was entitled to enforce the forum-selection clauses under a theory of equitable estoppel. Texas law includes a number of variations on the general principle of equitable estoppel. *See, e.g., Meyer v. WMCO–GP, L.L.C.,* 211 S.W.3d 302, 306 (Tex.2006) (interdependent and concerted misconduct estoppel); *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 739 (Tex.2005) (orig. proceeding) (direct-benefit estoppel); *In re Polymerica, LLC,* 271 S.W.3d 442, 449 (Tex.App.-El Paso 2008, orig. proceeding, pet. struck) (substantial-benefit estoppel); *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 136 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd) (quasi-estoppel). Estoppel is an equitable doctrine and its application depends on the facts of each case. *Van Zanten v. Energy Transfer Partners, L.P.,* 320 S.W.3d 845, 848–49 (Tex.App.-Houston [1st Dist.] 2010, no pet.) (citing *In re Weekley Homes,* 180 S.W.3d 127, 134–35 (Tex.2005)). The lynchpin for all equitable estoppel is equity. *Hill v. G E Power Sys., Inc.,* 282 F.3d 343, 349 (5th Cir.2002).

 In the motion to dismiss below, Highland urged application of an estoppel based on Mariner's allegations of interdependent and concerted misconduct by Holdco, Cornerstone, and Highland. Highland contended that Mariner's suit was an attempt to gain the benefits of the Note (while not specifically suing to enforce the Note on its terms) by asserting "intertwined claims" against the three parties. The result was a claim that purported to tie all three defendants to the obligations of Holdco under the Note. Highland asserted that, under these circumstances, equity required that it be allowed to join in the enforcement of the parties' forum selection. In this Court, Highland continues to rely on the estoppel theory, stressing that Mariner's claims invoke equitable concerns based on both concerted misconduct and intertwined claims against related defendants.

Highland's theory is supported, *inter alia,* by the opinion in *Deep Water Slender Wells, Ltd. v. Shell International Exploration & Production, Inc.,* 234 S.W.3d 679 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). In that case, the court advised: "Courts should apply equitable estoppel when a signatory to the contract containing the forum-selection clause raises allegations of substantially interdependent and concerted misconduct by both nonsignatories and one or more signatories to the contract." *Id.* at 694 (citing *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527 (5th Cir.2000), and *Meyer v. WMCO–GP, L.L.C.,* 211 S.W.3d 302, 306 (Tex.2006)). In the situation described by *Deep Water Slender Wells,* the signatory has brought nonsignatories into a lawsuit based on an instrument they did not sign, but it has made allegations that they acted in concert with another signatory. This is precisely the situation in Mariner's lawsuit.

Mariner contends the theory of equitable estoppel relied upon by relators has been rejected by the Texas Supreme Court in *In re Merrill Lynch Trust Co.,* 235 S.W.3d 185 (Tex.2007) (orig. proceeding). Mariner reads *Merrill Lynch* too broadly. In that case, the plaintiffs (a husband and wife) were signatories to an agreement that contained an arbitration clause. The plaintiffs did not sue the other signatory; instead, they sued a number of nonsignatories, who attempted to compel arbitration. The supreme court concluded some parties could enforce the arbitration clause and some could not. For example, where the

---

could be read as a challenge to Cornerstone's right to enforce it—and we do not read it that way—the issue is not raised in this original proceeding.

parties sued certain employees of the signatory, but not the signatory itself, for conduct in the course of their employment, the employees were entitled to enforce their employer's arbitration clause. *See id.* at 189–90. However, the plaintiffs also sued a pair of companies that had their own contracts with the plaintiffs; those contracts did not contain arbitration clauses. The supreme court concluded that allowing those companies to compel arbitration would, in effect, permit them to rewrite their contracts with the plaintiffs. *Id.* at 191.

The defendant companies then urged the supreme court to apply an equitable estoppel based upon concerted misconduct and allow them to force the plaintiffs to arbitrate against them as well. The court asserted that it had "never compelled arbitration based *solely* on substantially interdependent and concerted misconduct," and it declined to do so in *Merrill Lynch* as well. *Id.* (emphasis added). Amidst this very conclusion, however, the supreme court stated:

> We noted allegations of concerted misconduct in *Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 306–07 (Tex.2006), but compelled arbitration because the plaintiff's claims depended on the underlying agreement, and thus were governed by principles of direct-benefit estoppel.

*Id.* at 191 n. 22. *Meyer* was decided just a year before *Merrill Lynch,* and this reference to it within *Merrill Lynch* assures us that *Meyer* is still good law. *Meyer* actually sets forth two scenarios when equitable estoppel would support a nonsignatory compelling compliance with a contract:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies *when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted *when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.* Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Meyer,* 211 S.W.3d at 305–06 (emphasis added). In the case before us, both of these bases for equitable estoppel exist. Mariner, a signatory, must rely on the Note in asserting its claims against Cornerstone and Highland. And Mariner has made allegations of substantially interdependent and concerted misconduct by Holdco, Cornerstone, and Highland.

We agree this is not a typical direct-benefit-estoppel case. In such a case, a nonsignatory plaintiff who seeks the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d at 739. However, the supreme court included the *Meyer* estoppel within this category, and we can certainly see parallels in Mariner's case. Here, the signatory is attempting to avoid its own contract's burden while enforcing the benefits it derived from the contract. As we noted above, the lynchpin for all equitable estoppel is equity. *Hill,* 282 F.3d at 349. Under the facts of this case,

equity demands that Highland be permitted to hold Mariner to its own bargain.

We conclude Highland may enforce the parties' selection of the New York forum by virtue of equitable estoppel.

## Conclusion

A trial court abuses its discretion when it does not properly interpret or apply a forum-selection clause. *Laibe Corp.,* 307 S.W.3d at 316. In addition, the Texas Supreme Court has held there is no adequate remedy by appeal when a trial court abuses its discretion by refusing to enforce a valid forum-selection clause that covers the dispute. *See In re Int'l Profit Assocs., Inc.,* 274 S.W.3d 672, 675 (Tex.2009) (orig. proceeding). Thus, the trial court's failure to enforce the forum-selection clause in this case is properly corrected by issuance of a writ of mandamus. *See In re Lisa Laser USA, Inc.,* 310 S.W.3d 880, 883 (Tex.2010) (orig. proceeding); *Laibe Corp.,* 307 S.W.3d at 316. We conditionally grant the relators' petition for writ of mandamus. A writ will issue only in the event the trial court fails to vacate its April 26, 2011 Order Denying Defendants' Motion to Dismiss and to enter an order granting the motion to dismiss.

MURPHY, J., dissenting.

Opinion by Justice MURPHY, dissenting.

Under fundamental principles of contract interpretation and precedent of this Court, I would conclude the forum-selection clauses in the APA and in the Note cannot be blended into one transaction for purposes of this fraudulent transfer lawsuit brought by the holder of the Note (Mariner) against two nonsignatories (Cornerstone and Highland). The majority, in concluding it can "see no reason to read restrictions into the Note's [forum-selection clause]," does not address this Court's

precedent and further assumes Cornerstone's right to enforce the Note's clause. The majority also creates a new principle of equity, not argued by the parties, to allow nonsignatories to enforce a forum-selection clause. Because I would conclude the Note's forum-selection clause applies only to suits arising "under" or for "enforcement" of the Note, and that neither Cornerstone nor Highland has shown a right to enforce that clause, I respectfully dissent.

### *Applicability of the APA "Consent to Jurisdiction" Clause*

The majority agrees with Cornerstone that the "single forum-selection clause" in the APA applies to Mariner's fraudulent transfer claims against Highland and Cornerstone that "left Holdco insolvent and unable to repay the Note." In doing so, the majority construes the "Consent to Jurisdiction" clause in the APA as incorporated "in its entirety" into the Note; the majority thus concludes Mariner's fraudulent transfer lawsuit qualifies as an "action or proceeding arising out of or relating to [the APA]." In so holding, the majority does not address Mariner's argument that this Court's decisions in *In re Wilmer Cutler Pickering Hale & Dorr LLP,* No. 05–08–01395–CV, 2008 WL 5413097, at *4 (Tex.App.-Dallas Dec. 31, 2008, orig. proceeding [mand. denied]) (mem.op.) and *RSR Corp. v. Siegmund,* 309 S.W.3d 686, 701 (Tex.App.-Dallas 2010, no pet.), are applicable.

*Wilmer Cutler* involved a single instrument, an indemnity agreement between an employer (McAfee) and its employee (Goyal), in which McAfee agreed to indemnify and defend Goyal against actions brought against him by reason of his status as an agent of McAfee. The agreement included McAfee's promise to advance Goyal's defense costs; as a result, McAfee paid Goy-

al's legal bills. When McAfee, a signatory to the indemnity agreement, thereafter sued the law firm for fraud, this Court concluded the law firm had no "standing" to enforce the forum-selection clause in the indemnity agreement. *Wilmer Cutler*, 2008 WL 5413097, at *3. Additionally, the Court distinguished two clauses in a single sentence contained in that agreement, which read in its entirety:

> Consent to Jurisdiction. [McAfee] and [Goyal] each hereby irrevocably consent to the jurisdiction of the courts of the State of Delaware for all purposes in connection with any action or proceeding which arises out of or relates to this Agreement and agree that any action instituted under this Agreement shall be brought only in the state courts of the State of Delaware.

*Id.* at *4. This Court concluded, applying the plain language of the sentence, that the consent-to-jurisdiction clause, which applied "in connection with any action or proceeding which arises out of or relates to" the agreement, had a different scope from the forum-selection clause, which was limited to an action instituted "under" the agreement. *Id.; see also RSR Corp.*, 309 S.W.3d at 701 (quoting *Wilmer Cutler*, 2008 WL 5413097, at *4 and distinguishing between a broad consent to jurisdiction clause in one agreement and a narrower forum-selection clause in a later document). This Court explained that McAfee's fraud suit was not a suit "under" the indemnity agreement because McAfee was not "relying on the terms and authority of the agreement as the basis for the rights sued upon. In other words, the forum-selection clause ... applies only if the claimant is suing on rights that are created by the indemnity agreement itself." *Wilmer Cutler*, 2008 WL 5413097, at *4. The majority does not address this authority in concluding it can "see no reason to read restrictions into the Note's provision."

I would conclude, based on *Wilmer Cutler* and *RSR Corp.*, we cannot exclude the language of the Note requiring that the "Consent to Jurisdiction" clause of the APA "shall apply in connection with *any dispute under or enforcement of this Note.*" (Emphasis added). In *Wilmer Cutler*, there was a single sentence, as quoted above, and this Court concluded the second part of the sentence limited the forum selection. *See id.* at *4. Both parts of that sentence applied to the same document— the indemnity agreement. Here, there are at least two separate documents—the Note was only one part of the asset purchase transaction. The APA "consent to jurisdiction" clause by its express terms relates to the APA—not the "transaction." And the Note clause states clearly that the "consent to jurisdiction" clause applies to "any dispute under or enforcement of" the Note—also not mentioning the "transaction." The majority does not address how it has excised the language "under or enforcement of this Note" from the forum-selection clause of the Note. I would agree with Mariner that Cornerstone has not shown its right to enforce the forum-selection clause in the Note, as argued in its response to the motion to dismiss below and in its response to the petition for writ of mandamus.

While I agree Mariner has pleaded a cause of action for fraudulent transfer based on its inability to collect under the Note, I do not agree its suit relates to or arises out of the APA as concluded by the majority. As this Court explained in *Wilmer Cutler*, Mariner's fraudulent transfer suit is not a suit "under" the APA because Mariner is not "relying on the terms and authority of the [APA] as the basis for the rights sued upon. In other words, the forum-selection clause of [the Note] applies only if the claimant is suing on rights

that are created by the [Note] itself." *Id.* at *4.

### Cornerstone's Right to Enforce the Forum–Selection Clause in the Note

The majority expressly assumes Cornerstone has the right to enforce the forum-selection clause in the Note, claiming "Mariner did not challenge Cornerstone's right to enforce the forum-selection clause in its response to the motion to dismiss below." It also states Mariner made no argument against Cornerstone's right to enforce the clause in this Court," and "the issue of Cornerstone's right to enforce forum selection is not before us." Yet, Cornerstone never asserted the right to enforce the Note, either below or in this proceeding. Instead, it asserted in its motion to dismiss below that "[t]he APA contains a valid and enforceable forum-selection clause, and under Texas law, Cornerstone, as assignee of the APA, is entitled to enforce that clause against [Mariner]." Moreover, Mariner did challenge Cornerstone's right to do so. Specifically, it argued under the bold heading "The forum selection clause in the Promissory Note excludes this dispute under its own terms":

> Cornerstone does not attempt to explain how it could be entitled to enforce the [Note's] forum selection clause, preferring to treat it as non-existent. Indeed, Cornerstone cannot do so. *First of all, Cornerstone was not a party to the [Note] and does not claim to be an assignee of rights under that agreement* . . . . Even assuming that Cornerstone established that it has standing to enforce the [Note's] forum selection clause (Cornerstone has not even tried), it would not matter in this case.

(Emphasis added.)

Similar to its argument in its motion to dismiss, Cornerstone argues as the basis for its petition for writ of mandamus that the Note is part of the "subject matter" of the APA, an argument that the majority accepts in its opinion. Cornerstone claims entitlement to enforce that forum-selection clause solely as the assignee of all rights of Holdco LLC under the APA. Those rights did not include the Note or its collection. Even though Cornerstone does not claim the right to enforce the Note's forum-selection clause, Mariner emphasizes again in this Court in response to the petition for writ of mandamus that Cornerstone "did not take an assignment of the Note." It argues specifically that "[if] a contractual clause must be applied here, it would be the forum selection clause in the Note." In describing what it interprets as a "narrowly written" forum-selection clause in the Note and for the sake of argument, Mariner adds:

> This is neither a suit under the Note nor a suit to enforce the Note. This dispute would not fall under the terms of the Note forum selection clause, *assuming it could be invoked by Cornerstone and Highland*, and the motion to dismiss was properly denied.

(Emphasis added.)

I would conclude Mariner has challenged Cornerstone's right to enforce the forum-selection clause in the Note and that Cornerstone has sought to avoid that clause by arguing the Note was part of the subject matter of the APA. I also would conclude Cornerstone failed to show it was entitled to enforce the Note forum-selection clause because it was not an assignee of the Note and it never argued any equitable basis for enforcement. By assuming Mariner has not contested Cornerstone's right to enforce the forum-selection clause in the Note, the majority limits its construction of the record and concludes the trial court abused its discretion by not

granting a motion to dismiss based on a "standing" claim Cornerstone never made and which Mariner challenged. *See, e.g., id.* at *2–3 (addressing McAfee suit for fraud, where McAfee was signatory to indemnity agreement; concluding Wilmer Cutler had no standing as nonsignatory to enforce forum-selection clause in indemnity agreement). Additionally, I would conclude the forum-selection clause in the Note governs Mariner's lawsuit; because Cornerstone has shown no right to enforce the Note, I would conclude the trial court did not abuse its discretion in denying Cornerstone's motion to dismiss.

### Highland's Right to Enforce the Forum–Selection Clause in the APA or the Note

Finally, Cornerstone and Highland assert that Highland, a nonsignatory to the APA and the Note, can enforce the forum-selection clause as an affiliate of Cornerstone because the claims are "intertwined," that is, "Mariner has no claim for fraudulent transfer unless it has a claim on the Note." I would conclude we do not reach Highland's argument because it rests on Cornerstone's right to enforce the forum-selection clause in the APA. Additionally, I would conclude the majority incorrectly holds that both direct-benefits estoppel and "interdependent and concerted misconduct" estoppel apply to allow Highland to enforce the forum-selection clause of the APA, and thus the Note under its analysis. By concluding direct-benefits estoppel applies, the majority is creating a new application of the doctrine. *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 739 (Tex.2005) (orig. proceeding) (under direct-benefits estoppel, a non-signatory plaintiff seeks benefits of contract and is estopped from simultaneously attempting to avoid contract's burdens). Here, it is the signatory, Mariner, who is suing, and it is the nonsignatories, Cornerstone and Highland, who are attempting to avoid setting aside their asset transfers to allow Mariner to enforce the Note against Holdco LLC. Moreover, though Cornerstone and Highland argue in their reply brief that the action at least should be stayed against Highland, and they effectively relinquish their argument as to the applicability of equitable estoppel based on "substantially interdependent and concerted misconduct," *see In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185 (Tex.2007) (orig. proceeding), the majority fashions a new "equity" argument for the parties. If these new "equity" arguments prevail, any nonsignatory to a debt instrument sued for fraudulent transfer, no matter how far removed from the transaction, could enforce a forum-selection clause agreed to by the original parties to the debt. I would conclude this is an erroneous application of equity and, again, would not conclude the trial court abused its discretion by not applying these new equitable principles. I therefore respectfully dissent.