**Affirm and Opinion Filed December 10, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01044-CV

**CHANDLER MANAGEMENT CORPORATION, Appellant**
**V.**
**FIRST SPECIALTY INSURANCE CORPORATION, VERICLAIM, INC. AND JASON KEEN, Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-06968-E**

## OPINION

Before Justices Francis and Myers[1]
Opinion by Justice Myers

Chandler Management Corporation appeals the trial court's order dismissing its suit against First Specialty Insurance Corporation, Vericlaim, Inc., and Jason Keen without prejudice for Chandler to re-file in New York pursuant to a forum-selection clause in the parties' contract. Chandler brings four issues on appeal contending (1) the trial court erred by dismissing Chandler's suit against Vericlaim and Keen because First Specialty did not request that relief and because the forum-selection clause did not apply to them; (2) First Specialty could not seek enforcement of the forum-selection clause because it did not comply with the requirements of the Texas Insurance Code; (3) the forum-selection clause should not be enforced because it is the

---

[1] Justice David Lewis was a member of the panel and participated in the submission of this case, but he did not participate in the issuance of the opinion. *See* TEX. R. APP. P. 41.1(b).

product of overreaching, would deprive Chandler of its day in court, and is against the public policy of the State of Texas; and (4) the court erred by denying Chandler limited discovery. We affirm the trial court's judgment.

## BACKGROUND

Chandler manages apartment complexes in Texas and Virginia, including two complexes in Dallas. To insure the complexes, Chandler purchased a surplus lines commercial property insurance policy issued by First Specialty. The policy was for November 15, 2010 to November 15, 2011. Chandler did not receive a copy of the policy until March 24, 2011. The policy contained a provision that the laws of the State of New York would govern the policy and that exclusive jurisdiction would be with the courts of the State of New York. In May 2011, a wind and hail storm damaged the roofs of the Dallas apartments. Chandler reported the loss to First Specialty, which hired Vericlaim and Keen to adjust the claim. First Specialty determined that the amount of damage was below the $25,000 deductible, and it denied payment of the claim.

Chandler brought suit in June 2012, alleging the damage from the storm was over $1.5 million. Chandler sued First Specialty for breach of contract and breach of the duty of good faith and fair dealing; Chandler also alleged that First Specialty was an unauthorized insurer in Texas. Chandler sued First Specialty, Vericlaim, and Keen for violations of the insurance code and of the Deceptive Trade Practices–Consumer Protection Act (DTPA). First Specialty, with the consent of Vericlaim and Keen, moved to dismiss the suit without prejudice to Chandler refiling in New York pursuant to the policy's forum-selection clause. The trial court granted the motion and dismissed the suit without prejudice to the suit's filing in New York.

## STANDARD OF REVIEW

"A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit." *Phoenix Network Techs.*

–2–

*(Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We review a trial court's grant of such a motion to dismiss for an abuse of discretion. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 709 (Tex. App.—Dallas 2010, no pet.). However, to the extent our review involves the interpretation of a contract, which is a legal matter, our review is de novo. *Id.* The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, that is, whether it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The trial court does not abuse its discretion when its decision is based on conflicting evidence and there is evidence in the record that reasonably supports the decision. *RSR Corp.*, 309 S.W.3d at 709.

## SCOPE OF TRIAL COURT'S ORDER

In its first issue, Chandler asserts the trial court's order was excessive in scope by dismissing Chandler's claims against Vericlaim and Keen.

Chandler argues that granting the motion as to the claims against Vericlaim and Keen was improper because they never moved for dismissal. The amended motion to dismiss states, First Specialty, "with the consent and agreement" of Vericlaim and Keen, "moves the Court to dismiss Plaintiff's Second Amended Petition without prejudice to [refiling] in New York." The motion also states, "Vericlaim and Keen join in this Motion to Dismiss, and consent to jurisdiction in New York if this suit is re-filed there." An exhibit to the motion to dismiss is Vericlaim and Keen's "Agreement to Motion to Dismiss Pursuant to a Mandatory Forum Selection Clause," which states they "hereby agree to" First Specialty's motion to dismiss and "consent to jurisdiction over this matter in New York." By agreeing to the motion to dismiss, Vericlaim and Keen agreed with the statement that they joined in the motion to dismiss. By joining in the motion to dismiss, Vericlaim and Keen were parties to the motion. Therefore, the basis of Chandler's argument, that Vericlaim and Keen did not move for dismissal, is incorrect.

–3–

Chandler also argues that even if Vericlaim and Keen had requested dismissal, they could not enforce it because they were not parties to the insurance contract. A nonsignatory to a contract may enforce a forum-selection clause under the doctrine of equitable estoppel. *See In re Cornerstone Healthcare Holding Group, Inc.*, 348 S.W.3d 538, 544 (Tex. App.—Dallas 2011, orig. proceeding). Under that doctrine, a nonparty to a contract may compel compliance with a forum-selection provision in a contract in two situations: (1) when the signatory to a written contract relies on the terms of the written agreement in asserting its claims against the nonsignatory; and (2) when the signatory's claims allege "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (emphasis omitted) (forum-selection clause) (quoting *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 306 (Tex. 2006) (motion to compel arbitration)).

In this case, the insurance policy stated First Specialty would "determine the value of the lost or damaged property, or the cost of its repair or replacement." Chandler alleged that First Specialty, Vericlaim, and Keen had the duty under the policy to investigate Chandler's claims and pay policy benefits. Chandler alleged that First Specialty hired Vericlaim and Keen to evaluate the damage to the apartment complexes. Chandler asserts First Specialty, Vericlaim, and Keen then hired Chad Augspurger and Brett Lochridge because they knew Augspurger and Lochridge were biased for insurers and would "provide result-oriented estimates and reports to help insurers and their adjusters low-ball windstorm and hail claims." Chandler also alleged that Vericlaim and Keen refused to consider unsealed shingles and shingle uplift as damage from a wind and hail storm even though an order from the commissioner of insurance required they be considered as direct physical loss from windstorm damage.

Chandler's causes of action against Vericlaim and Keen alleged they violated the DTPA through misconduct that was substantially interdependent with the actions of First Specialty. *See*

–4–

*In re Cornerstone*, 348 S.W.3d at 544. Chandler asserted First Specialty, Vericlaim, and Keen violated the Deceptive Trade Practices Act as follows:

> A. By their acts, omissions, failures, and conduct that are described in this petition, Defendants First Specialty, Vericlaim, and Jason Keen, have violated Sections 17.46(b)(5), (7), (12) and (20) of the DTPA. In this respect, these Defendants' violations include, without limitation, (1) their unreasonable delays in the investigation, adjustment and resolution of Plaintiff's claim, (2) their failure to properly investigate Plaintiff's claim, (3) their hiring of and reliance upon biased adjusters, consultants, and engineers to obtain favorable, result-oriented reports and estimates to assist Defendants in low-balling and denying Plaintiff's windstorm and hail damage claim, and (4) their failure to pay for the proper repair of Plaintiff's property after their liability had become reasonably clear;
>
> B. As described in this petition, these Defendants represented to Plaintiff that its insurance policy and Defendants' adjusting and investigative services had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;
>
> C. As described in this petition, these Defendants represented to Plaintiff that its insurance policy and Defendants' adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46(b)(7) of the DTPA;
>
> D. As described in this petition, the Defendants represented to Plaintiff that its insurance policy and Defendants' adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, which gives Plaintiff the right to recover under Section 17.46(b)(12) [o]f the DTPA;
>
> . . . .
>
> G. Defendants' actions, as described in this petition, are unconscionable in that it took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendants' unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and
>
> H. Defendants' conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

Chandler also asserted claims against Vericlaim and Keen under chapter 541 of the Texas Insurance Code. TEX. INS. CODE ANN. §§ 541.001–.454 (West 2009 & Supp. 2014). These claims concerned First Specialty, Vericlaim, and Keen's failure to investigate Chandler's claims, delays in their investigation, and their failure to pay for the proper repair of Chandler's damaged

property.    Chandler asserted First Specialty, Vericlaim, and Keen violated the insurance code as

follows:

> A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

> B. Engaging in unfair claims settlement practices;

> C. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

> D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendants' liability has bec[o]me reasonably clear;

> E. Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time;

> F. Refusing to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim; and

> G. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

Chandler's claims against First Specialty, Vericlaim, and Keen all rely upon First

Specialty's duty under the policy to investigate the claim and determine the value of the damage

or loss.  Several of Chandler's allegations against appellants reference the policy.  Chandler does

not separate its allegations against Vericlaim and Keen from those against First Specialty.  Thus,

Chandler's claims against Vericlaim and Keen necessarily rely on the policy, and those claims

are substantially interdependent with the actions of First Specialty.  *See In re Cornerstone*, 348

S.W.3d at 544.  Accordingly, the doctrine of equitable estoppel supports enforcement of the

forum-selection clause on First Specialty's claims against Vericlaim and Keen.

We conclude the trial court did not err by dismissing First Specialty's claims against

Vericlaim and Keen.  We overrule First Specialty's first issue.

**UNAUTHORIZED ISSUANCE OF INSURANCE**

In its second issue, Chandler contends the trial court erred by dismissing the case based on the forum-selection clause because, as an unauthorized issuer of insurance in Texas, First Specialty could not enforce the policy, including the forum-selection clause.

**Burden of Proof**

A surplus lines insurer is, by definition, not authorized to issue insurance in Texas. *See* Tex. Ins. Code Ann. § 981.002(4) (West Supp. 2014). Texas law permits surplus line insurers to provide insurance in Texas if the insurer qualifies as an "Eligible surplus lines insurer," which is a surplus lines insurer that meets certain requirements. *Id.*

Ordinarily, an unauthorized insurer cannot enforce an insurance contract. Ins. § 101.201(a) (West 2009). This restriction "does not apply to insurance procured by a licensed surplus lines agent from an eligible surplus lines insurer as defined by Chapter 981 . . . that are reported and on which premium tax is paid in accordance with Chapter 225 or 226." Ins. § 101.201(b)8. "Because surplus lines insurance is excepted from the general statutory restriction on unauthorized insurers, the burden of proving every fact essential to the invocation of the exception rests on" the insurer. *Yorkshire Ins. Co. v. Seger*, 279 S.W.3d 755, 765 (Tex. App.—Amarillo 2007, pet. denied). Chandler asserts that First Specialty did not prove the policy was procured by a licensed surplus lines agent and that First Specialty did not prove compliance with the statutory provisions to be considered an eligible surplus lines insurer.

**Procurement of the Policy from a Licensed Surplus Lines Agent**

To enforce the forum-selection provision, First Specialty had to prove that the agent procuring the policy was a licensed surplus lines agent. The insurance policy listed the "Agent/Producer" as "Westrope," and gives an address in Kansas City, Missouri. First Specialty presented the affidavit of Steven Trana, the vice president and controller of Midwestern General

Brokerage. Trana testified that Midwestern General Brokerage, located in Kansas City, Missouri, did business under the name Westrope & Associates. Attached as exhibit 3 to the affidavit was a document Trana testified was from a report provided by the Surplus Lines Stamping Office of Texas showing the policy was electronically stamped and that the stamping fees were paid by Westrope. That document states the "Agent" was Midwestern General Brokerage and gives the "Agent Nbr: 11143411" and "LicenseID: 1508338." Exhibit 1 of Trana's affidavit is a document from the Texas Department of Insurance showing Midwestern General Brokerage, Inc. was a surplus lines agency with license number 1508338. First Specialty also presented the affidavit of Philip Ballinger, the executive director of the Surplus Lines Stamping Office of Texas. Attached to his affidavit were copies of "screen prints" of data concerning the insurance policy in the stamping office's electronic filing system. Ballinger stated that the screen prints were a correct reflection of the data recorded and filed in the stamping office. The screen prints showed the "agent" for the policy was Midwestern General Brokerage, "Agent Nbr: 11143411," "LicenseID: 1508338." We conclude Trana's and Ballinger's affidavits and the exhibits attached to them provided sufficient evidence for the court to find that the agent procuring the policy, Midwestern General Brokerage doing business as Westrope & Associates, was a licensed surplus lines agent.

On appeal, Chandler asserts the trial court erred because the insurance policy listed Westrope as the "agency" and did not list an agent. We disagree. The policy clearly listed "Westrope" as the "Agent/Producer," Trana testified that Westrope & Associates was the business name of Midwestern General Brokerage, and the documents from the electronic files of the Texas stamping office listed Midwestern General Brokerage as the "Agent" and provided the Texas agent and license numbers. Chandler also asserts that the policy was not procured by a licensed surplus lines agent. We disagree. The policy stated "Westrope" was the

"Agent/Producer" for the policy, and the documents from the Texas stamping office show that Midwestern General Brokerage was the agent for the policy and had a Texas Department of Insurance agent number and "LicenseID." We conclude the trial court could find from this evidence that the policy was procured by licensed surplus lines agent.

### Procurement of the Policy from an Eligible Surplus Lines Insurer

To enforce the policy's provisions, First Specialty also had to prove it was an eligible surplus lines insurer. Chandler asserts that First Specialty did not show it complied with all of the provisions of the statutes to be considered an eligible surplus lines insurer. Chandler concludes that "First Specialty therefore provided no evidence that they are an eligible surplus lines insurer." However, the trial court took judicial notice of documents from the website of the Texas Department of Insurance showing that First Specialty was an "Eligible" "Surplus Lines Company," that it first became "Licensed/Eligible/Registered in Texas" on March 1, 1990, and that it had never been "Cancelled/Ineligible/Inactive." Chandler stated in the trial court that it did not object to the request to take judicial notice of these documents. These documents constitute some evidence to support the trial court's implied finding that First Specialty was an eligible surplus lines insurer.

### Violations of Chapter 981

Chandler also points out that the policy did not comply with section 981.101(b) because it did not contain the required admonition about the dangers of surplus lines insurance. *See* INS. § 981.101(b) (West 2009). Section 101.201 does not permit an unauthorized insurer to enforce an insurance contract unless the insurance was "procured by a licensed surplus lines agent from an eligible surplus lines insurer." INS. § 101.201. The insurance code does not require that the policy contain the admonition in section 981.101(b) for the insurer to be entitled to enforce the policy.

Chandler also contends that the policy violated section 981.101(c)(3) because it did not identify the rate of taxes to be collected.  Although the policy may not have complied with that provision, that failure to comply did not prevent First Specialty from being an eligible surplus lines insurer or prevent First Specialty from enforcing the policy's provisions.

Chandler also asserts the policy violated section 981.101(c)(4)(C) because it did not identify "the insurance agent who obtained the surplus line coverage."  The policy stated "Westrope" was the "Agent/Producer," and as discussed above, Midwestern General Brokerage, doing business as Westrope & Associates, was a licensed surplus lines insurance agent. Moreover, even if the policy violated section 981.101(c)(4)(C) by not identifying the agent that obtained the coverage, that would not prohibit First Specialty from qualifying as an eligible surplus lines insurer, nor would it prohibit First Specialty from enforcing the policy.

Chandler also asserts that First Specialty failed to show it complied with section 981.004(a), which provides that an eligible surplus lines insurer may provide surplus lines insurance only if the full amount of insurance cannot be obtained from an insurer authorized to write insurance in Texas.  *See* INS. § 981.004(a) (West Supp. 2014).  Even if the full amount of Chandler's insurance could have been obtained from an insurer authorized in Texas, the insurance was still issued by an eligible surplus lines insurer, so First Specialty is not prohibited from enforcing the policy, including the forum-selection clause.

The insurance code provides that violations of chapter 981 do not affect the enforceability of insurance policies by the parties unless the violations are "material and intentional."  INS. § 981.005 (West (2009).  The record contains no evidence that any violation, even if material, was intentional.  The code also provides that violations of chapter 981 may be punished with the sanctions described under chapter 82.  INS. § 981.006 (West 2009).  Chapter 82 authorizes the commissioner of insurance to impose an administrative penalty, direct the

–10–

insurer to make restitution to a harmed Texas resident, or cancel or suspend an insurer's authorization to issue insurance in Texas. *See* INS. §§ 82.051–.054 (West 2009). Therefore, under the insurance code, although First Specialty may be subject to various penalties for any noncompliance with chapter 981,[2] those violations of chapter 981 do not affect First Specialty's status as an eligible surplus lines insurer, nor do they prohibit First Specialty from enforcing the forum-selection clause.

We conclude Chandler has not shown First Specialty cannot enforce the forum-selection clause due to the unauthorized issuance of insurance. We overrule Chandler's second issue.

**OVERREACHING, DEPRIVATION OF DAY IN COURT, AND PUBLIC POLICY**

In its third issue, Chandler contends the forum-selection clause should not be enforced because it is the result of overreaching by First Specialty, it would deprive Chandler of its day in court, and enforcement of the forum-selection clause is against the public policy of the state of Texas.

Enforcement of a forum-selection clause is mandatory unless the party opposing enforcement "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004) (orig. proceeding) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). A forum-selection clause only comes within one of these exceptions if "enforcement would contravene a strong public policy of the forum in which the suit was brought, or when the contractually selected forum would be seriously inconvenient for trial."

---

[2] The record does not show that the commissioner imposed any penalty on First Specialty for failing to comply with chapter 981.

–11–

*Id.*; *see In re Tyco Elecs. Power Sys., Inc.*, No. 05-04-01808-CV, 2005 WL 237232, *4 (Tex. App.—Dallas Feb. 2, 2005, mandamus denied) (mem. op.).

Chandler asserts that its litigation of the suit in New York would be so gravely difficult and inconvenient as to deprive Chandler of its day in court. Chandler argues that necessary testimony in the case will include the strength and severity of the storm and the precise damage to the apartments. Chandler asserts this evidence can only be presented by certain former employees. Chandler states it cannot obtain those witnesses' testimony in New York because they are no longer under Chandler's control and they are not subject to the New York courts' subpoena power. However, Chandler does not explain why these witnesses could not be compelled to testify in New York through depositions taken in Texas pursuant to rule of civil procedure 201.2. *See* TEX. R. CIV. P. 201.2. We conclude Chandler has not shown it would be deprived of its day in court if forced to litigate in New York.

Chandler asserts the inclusion of the forum-selection clause in the policy was an act of overreaching by First Specialty. Chandler states it was unaware that the policy would contain a forum-selection clause requiring all litigation be conducted in New York and that it did not know of the clause until it received a copy of the policy 129 days after the policy took effect. Chandler stated it never agreed to the forum-selection clause. Whether overreaching occurred requires consideration of whether the contract results in unfair surprise or oppression. *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008) (orig. proceeding). Chandler received a copy of the policy in March 2011, but the record does not show that Chandler objected to the forum-selection clause until First Specialty sought to enforce the clause. Chandler presented no evidence that it would not have agreed to the policy if it had known of the forum-selection clause. Accordingly, the trial court could conclude Chandler failed to show it was unfairly surprised by the clause. The only oppression Chandler asserted was the difficulty of litigating in

–12–

New York. As discussed above, Chandler did not show the oppression would deprive it of its day in court. We conclude Chandler has not shown the forum-selection clause was the product of such overreaching that the clause should not be enforced.

Chandler also asserts the public policy of the state of Texas precludes enforcement of the forum-selection clause. Chandler selectively quotes from section 101.001(a) of the insurance code as follows: "residents face often insurmountable obstacles in asserting legal rights under the policies in foreign forums under unfamiliar laws and rules of practice." However, the full provision states,

> It is a state concern that many residents of this state hold insurance policies issued by persons or insurers who are not authorized to do insurance business in this state and who are not qualified as eligible surplus lines insurers under Chapter 981. These residents face often insurmountable obstacles in asserting legal rights under the policies in foreign forums under unfamiliar laws and rules of practice.

INS. § 101.001(a) (West 2009). In context, it is clear that the state's concerns apply only to residents doing business with "insurers who are not authorized to do insurance business in this state and who are not qualified as eligible surplus lines insurers under Chapter 981." As discussed above, First Specialty presented evidence that the department of insurance considered it qualified as an eligible surplus lines insurer. Therefore, the state's policy as expressed in section 101.001(a) does not apply to First Specialty.

We overrule Chandler's third issue.

### DISCOVERY

In its fourth issue, Chandler contends the trial court violated Chandler's procedural due-process rights by allowing First Specialty to marshal its proof but denying Chandler the opportunity to obtain discovery and the opportunity to respond. Chandler cites to the trial court's April 4, 2013 order, which granted First Specialty extra time to present evidence that the "Westrope" listed as "Agent/Producer" on the policy was Kevin Tracy Westrope and that the

policy was properly filed with the Texas Surplus Lines Stamping Office. The last paragraph stated that the motion to dismiss would remain under advisement pending submission of that evidence and that "[d]iscovery will be stayed pending disposition of the Motion to Dismiss."

The record does not show that Chandler objected to this order. Nor does the record show that Chandler requested but was denied the opportunity to conduct additional discovery or the opportunity to respond to First Specialty's supplemental evidence. The record shows Chandler filed a response to First Specialty's supplemental evidence, but it was not filed until the day after the trial court granted the motion to dismiss.

The record does not support Chandler's contention that the trial court violated Chandler's due-process rights by denying it the opportunity to conduct discovery and to respond to First Specialty's supplemental evidence. We overrule Chandler's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

131044F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHANDLER MANAGEMENT
CORPORATION, Appellant

No. 05-13-01044-CV      V.

FIRST SPECIALTY INSURANCE
CORPORATION, VERICLAIM, INC. AND
JASON KEEN, Appellees

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-06968-E.
Opinion delivered by Justice Myers. Justice
Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees FIRST SPECIALTY INSURANCE CORPORATION, VERICLAIM, INC. AND JASON KEEN recover their costs of this appeal from appellant CHANDLER MANAGEMENT CORPORATION.

Judgment entered this 10th day of December, 2014.