**AFFIRMED; Opinion Filed March 13, 2019.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-01258-CV**

**JOHNNY E. WEBB III, Appellant**
**V.**
**DIVERSEGY, LLC, DIVERSEGY CONSULTANT PROGRAM, LLC, LUCIEN J. TUJAGUE, AND DOMINION GAS HOLDINGS, LP, Appellees**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-14649**

## MEMORANDUM OPINION

Before Justices Bridges, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

In this complex business dispute, appellant Johnny E. Webb III challenges the trial court's order granting appellees'[1] motion to dismiss a lawsuit filed against them by Webb after related litigation and arbitration proceedings. In four issues on appeal, Webb contends (1) the trial court erred by dismissing this case "on the defense of collateral estoppel" and by failing to find enforcing the forum selection clause would be improper, and (2) appellees waived their defenses of collateral estoppel and forum selection by their actions pertaining to arbitration. We affirm the trial court's judgment.

---

[1] The appellees in this case are Diversegy, LLC ("Diversegy"); Diversegy Consultant Program, LLC ("DCP"); Lucien J. Tujague Jr.; and Dominion Gas Holdings, LP ("Dominion").

## I. FACTUAL AND PROCEDURAL CONTEXT

Diversegy, an "energy brokerage and advisory company," was formed in approximately 2010. Webb was a "member" of Diversegy from its inception. In December 2013, in connection with a pending sale of Diversegy (the "sale transaction"), a "Unit Purchase Agreement" (the "UPA") was executed by multiple sellers and buyers in that transaction. The UPA states in part,

> Each of the Parties submits to the exclusive jurisdiction of the state or federal courts located in Essex County, New Jersey, in any action or proceeding arising out of, or relating to, this Agreement, agrees that all claims in respect of the action or proceeding may be heard and determined in any such court and agrees not to bring any action or proceeding arising out of, or relating to, this Agreement in any other court.

### A. The "First Lawsuit"

Following the completion of the sale of Diversegy, Webb filed an August 2014 lawsuit in the trial court (the "First Lawsuit") against Diversegy and several sellers and buyers in the sale transaction, including sellers Tujague and Dominion. *See Webb v. Rodriguez*, No. 06-14-00102-CV, 2015 WL 3486175 (Tex. App.—Texarkana June 3, 2015, no pet.) (mem. op.).[2] Webb's claims in the First Lawsuit included breach of the UPA, conversion, fraud, misrepresentation, and breach of fiduciary duty. Those claims were premised on Webb's assertions that (1) he is "one of the founders and sellers of Diversegy" and (2) certain other sellers concealed debts owed to Webb and refused to pay Webb funds they received for the purchase of his shares. *See id*. at *1. Webb attached a "fully executed copy" of the UPA to his petition in the First Lawsuit. *Id*. at *2. That document's "Signature Page to Unit Purchase Agreement" included a signature line for "Johnny Webb," on which appears a signature "which purports to be Webb's." *Id*.

The defendants in the First Lawsuit filed a motion asking the trial court to dismiss Webb's action based on the UPA's forum selection clause. *Id*. at *1. In response, Webb asserted he "did not authorize or agree to the [UPA] and it is therefore not enforceable against [him]." *Id*. The

---

[2] The First Lawsuit was originally appealed in this Court, but the Texas Supreme Court transferred the appeal to the Sixth Court of Appeals of Texas in Texarkana pursuant to its docket equalization function. *See* TEX. GOV'T CODE ANN. § 73.001.

defendants' reply brief in that lawsuit, filed on the day of the dismissal hearing, attached "the affidavits of three witnesses who stated that they saw Webb sign the [UPA]" (the "Rodriguez affidavits"). *Id*. at *2. After the hearing, at which Webb "claimed that he did not sign the [UPA]," the trial court signed an order dismissing Webb's lawsuit without prejudice to its refiling in Essex County, New Jersey. *Id*.

Some two weeks later, Webb filed a motion for reconsideration, to which he attached his own affidavit stating that he did not sign the UPA, did not authorize his signature on the UPA, and did not attend a signing party. *Id*. at *4 n.5. He also attached the affidavit of another person who allegedly participated in the signing party, and the affidavit of a purported handwriting expert who questioned the authenticity of Webb's signature on the UPA. *Id*. Those affidavits were discussed and called to the trial court's attention at the hearing on Webb's motion for reconsideration. *Id*. The trial court denied the motion for reconsideration.

Webb appealed. He contended in part (1) "in the absence of proof that Webb signed the [UPA], there is no showing that Webb entered into an agreement to an exclusive forum," and (2) "the trial court erred in relying on the Rodriguez affidavits without first providing [Webb] an opportunity to respond with his own affidavit." *Id*. at *2–3. The Sixth Court of Appeals affirmed the trial court's dismissal order "because (1) the forum selection clause is enforceable against Webb [and] (2) Webb's complaint regarding the Rodriguez affidavits is not preserved for [appellate] review." *Id*. at *1. Specifically, (1) Webb "affirmatively stated that he was a seller under the [UPA]" and "attached an executed copy of the [UPA] to his Original Petition, as well as an affidavit verifying that the allegations and information in his lawsuit were true and correct"; (2) "Webb cannot assert that [defendants are] liable to him for damages flowing from a breach of the [UPA] while simultaneously claiming that the forum selection clause does not apply to those claims"; and (3) in the trial court, the Rodriguez affidavits "were discussed variously throughout

–3–

the hearing," the defendants "plainly relied on the affidavit evidence," and "Webb never objected to the filing of the affidavits on the date of the hearing and did not request a continuance for the purpose of filing a counter-affidavit." *Id*. at *2–4. Webb did not file a petition for review in the supreme court challenging the judgment of the Sixth Court of Appeals, nor does the record show he filed any lawsuit in New Jersey.

### B. The Arbitration Action

In November 2015, sellers Nicholas Gallagher and Dominion initiated an arbitration action in Dallas against the buyers in the sale transaction (the "buyers"). That arbitration action pertained to certain "contingent payments" allegedly required under the UPA. The UPA required arbitration to take place in Dallas, Texas.

The buyers filed an answering statement asserting "counterclaims" against Dominion and several additional sellers, including Webb and Tujague. Webb then filed an answering statement and "cross/counterclaims"[3] in that arbitration action. In his answering statement, Webb "object[ed] to jurisdiction of this arbitration" on the basis that he "was not a true party to the UPA because his name was forged on the document and he was without knowledge of the UPA or its terms" and he "therefore is not subject to the UPA or its terms and his claims are within the jurisdiction of federal and/or state district court, not arbitration." Webb requested the arbitrator to "exercise his/her power to rule upon the issue of jurisdiction as a preliminary matter expediently."

The arbitrator held a September 13, 2016 hearing on "the issue of this Arbitrator's jurisdiction over [Webb]." Following that hearing, the arbitrator signed an order that stated in part (1) "[a]ll of the parties participating in the hearing took the position that the appropriate manner for determining whether Webb had signed the agreement, including the arbitration provisions, was

---

[3] Webb asserted "cross/counterclaims" against the buyers and several others, including Diversegy, Dominion, and Tujague. Those claims included conversion, fraud, forgery, misrepresentation, breach of fiduciary duties, breach of good faith and fair dealings, quasi-contract, and quantum meruit.

one for the Courts with appropriate jurisdiction," and (2) "this proceeding shall be stayed to allow Webb to seek a determination in Court."

### C. The "Second Lawsuit"

In November 2016, Webb filed this lawsuit in Dallas County (the "Second Lawsuit").[4] In his petition, Webb described the proceedings in the First Lawsuit. He also alleged (1) "[i]n a fraudulent scheme to conceal the debt owed to [Webb] so as not to represent the true value of the company, Defendants acted in concert to forge [Webb's] name as a seller to purchase documents created to effectuate the sale of the company," and (2) Webb "is not subject to [the arbitration action] or the terms and conditions of the UPA because his name was forged." Webb's claims in the Second Lawsuit included fraudulent transfer, "fraud by forgery," and breach of contract based on Diversegy's "operating agreement" and Webb's commission contract.

Appellees moved to dismiss the Second Lawsuit, claiming Webb was collaterally estopped from filing in courts other than in Essex County, New Jersey. Webb countered: the motions to dismiss "must fail" because "(1) Defendants . . . waived jurisdiction and forum selection when they sued Mr. Webb in arbitration and agreed to this action; (2) Defendants waived jurisdiction and forum selection when they failed to raise it in arbitration; and (3) [neither] res judicata nor collateral estoppel apply because there has not been any litigation of the issue of fraud and the previous court expressly made no findings as to any allegation raised in that action or this one." Webb requested "an evidentiary hearing so that he may show clearly that the forum selection clause relied upon is invalid due to fraud or that it would be unreasonable and unjust to enforce it now."

---

[4] The Second Lawsuit was originally assigned to the 134th Judicial District Court of Dallas County. Appellees requested transfer to the trial court. *See* Dallas (Tex.) Civ. Dist. Ct. Loc. R. 1.02 ("Every proceeding seeking to attack, avoid, modify, or set aside any judgment, order[,] or decree of a Civil Court of Dallas County shall be assigned to the Court in which such judgment, order[,] or decree was rendered."). However, appellees then "decided to go forward" in the 134th Judicial District Court in order to "get this done on as quickly as possible." During a February 13, 2017 hearing in the 134th Judicial District Court, the judge stated rule 1.02 "sounds pretty mandatory" and asked why the case was not "back in [the trial court]." Webb argued rule 1.02 is inapplicable. Following that hearing, the Second Lawsuit was transferred to the trial court.

During the March 30, 2017 hearing on appellees' motions to dismiss, the trial court asked Webb, "Was the—in the prior litigation, was there a defense of forgery?" Counsel for Webb responded in part,

> Yeah, yes. Your—well, we asserted that there was fraud. We also asserted there was no authorization by my client to actually enter into this sale. When we filed [the First Lawsuit], we didn't have all the evidence that his name had actually been forged. And this Court asked previous counsel when we were in here, well, why didn't y'all put that in the pleading that his name was actually forged?
>
> And our response was, well, you know, we're getting to our proof, but we're on record the whole time saying it's forged. . . . [Defendants in the First Lawsuit] went out and . . . got these affidavits that they now want to distance themselves from that this Court relied on we're asserting are perjured, and we're ready to prove that today. . . .

And, in describing the First Lawsuit in the Second Lawsuit's petition, Webb said, "Moreover, Mr. Webb contended that he had been defrauded by forgery; that defendant sellers forged his signature on the [UPA]."

On July 14, 2017, Webb filed in the trial court an "Application for Order to Continue Stay of Arbitration, for Discovery, and for Evidence Necessary for Trial Pursuant to Tex. Civ. Prac. & Rem. Code Sec. 171.023(a)–(b) and 171.086(b)(1)." Section 171.023(a)–(b), part of the Texas Arbitration Act, states, "If there is a substantial bona fide dispute as to whether an agreement to arbitrate exists, the court shall try the issue promptly and summarily."

The trial court signed a July 29, 2017 final order granting appellees' motions to dismiss "based on the forum selection clause at issue" and dismissing this case "without prejudice in favor of presentation in an appropriate forum in Essex County, New Jersey, or before the arbitrator in the current arbitration proceeding, should the arbitrator reconsider his ruling regarding judicial determination of the issue of forgery." Webb made timely requests for findings of fact and conclusions of law, but the trial court did not file any. Webb timely appealed.

## II. WEBB'S ISSUES

### A. Collateral Estoppel

Collateral estoppel prevents relitigation of issues resolved in a prior suit, even if the issue recurs in the context of a different claim. *See, e.g., City of San Antonio v. Cortes*, 468 S.W.3d 580, 586 (Tex. App.—San Antonio 2015, pet. denied) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." RESTATEMENT (SECOND) OF JUDGMENTS § 27; *see Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 754–55 (Tex. 2017). We review collateral estoppel's application de novo because it is a question of law. *See In re J.A.C.*, No. 05-17-00768-CV, 2018 WL 2191604, at \*3 (Tex. App.—Dallas May 14, 2018, no pet.) (mem. op.).

A party seeking to establish that a claim is barred by collateral estoppel must prove (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). In determining whether the facts were fully and fairly litigated in the first suit, we consider (1) whether the parties were fully heard, (2) whether the court supported its decision with a reasoned opinion, and (3) whether the decision was subject to appeal or was in fact reviewed on appeal. *BP Auto. LP v. RML Waxahachie Dodge, LLC*, 517 S.W.3d 186, 200 (Tex. App.—Texarkana 2017, no pet.) (citing *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991)). To determine whether a fact issue is essential to the judgment, we look to the factual determinations made by the trier of fact that are "necessary to form the basis of a judgment." *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988).

In his first issue, Webb asserts the trial court "erred in dismissing [this] case on the defense of collateral estoppel when the fraud claim was not fully and fairly litigated" and also contends "findings of fact and conclusions of law were properly requested but not filed by the [trial] court and therefore harmful error is presumed."

We begin with Webb's complaint respecting the lack of written findings of fact and conclusions of law. A trial court's refusal to issue written findings and conclusions upon proper request is presumed reversible error unless the record affirmatively shows the requesting party suffered no harm. *Willms v. Americas Tire Co., Inc.*, 190 S.W.3d 796, 801 (Tex. App.—Dallas 2006, pet. denied). Generally, a complainant has been harmed if the failure to make findings and conclusions causes him to have to guess at the reason the trial court ruled against him or prevents him from properly presenting his case to the appellate court. *Id*. at 802. But, if only one issue is presented to the trial court, a complainant does not usually have to guess at the reasons for the trial court's ruling. *Id*. So it is here.

Webb grounds his complaint on the similarity of the trial court's dismissal orders. The orders dismissing both lawsuits both mention the forum selection clause but the second does not mention collateral estoppel. Webb says his appellate brief "addresses both defenses of forum selection and collateral estoppel in speculation because the reasons for the [trial court's] ruling are not obvious and do not address the argument of the Defendants, i.e., collateral estoppel."

In their motions to dismiss, appellees requested dismissal solely "on the basis of collateral estoppel" because the issue of whether the UPA's forum selection clause is enforceable against Webb had been resolved in a prior suit. Webb did not have to guess at the reason for the trial court's ruling. Further, Webb's appellate brief addresses both forum selection and collateral estoppel. He has properly presented his case on appeal. We conclude the record affirmatively

shows Webb was not harmed by the lack of written findings of fact and conclusions of law. *See id.*

Next, we address whether the trial court erred by dismissing this case "on the defense of collateral estoppel." In both lawsuits, Webb asserted claims pertaining to the sale transaction, and contended the UPA is not enforceable against him because he did not sign the UPA. In the First Lawsuit, the trial court held a hearing and concluded the defendants met their burden to show the forum selection clause was "enforceable against Webb." The trial court held a hearing on Webb's motion to reconsider based on his affidavits and denied it. The court of appeals affirmed that decision after full briefing and no party sought further appellate review. The facts were fully and fairly litigated. *See BP Auto.*, 517 S.W.3d at 200. Webb's fraud and forgery claims were essential to the trial court's dismissal. To conclude the UPA's forum selection clause bound Webb, the trial court had to first find he was a party to it. To do that, the court had to conclude his signature was not forged. The facts were essential to the trial court's judgment. *See Tarter*, 744 S.W.2d at 928.

In the Second Lawsuit, Webb again claimed he was not bound by the forum selection clause because he did not sign the UPA. Appellees moved for dismissal based solely on collateral estoppel on that same issue—the enforceability of the forum selection clause against Webb—and the trial court granted their motion. And Webb sued the same parties[5] in both lawsuits. We conclude Webb is collaterally estopped from challenging the enforceability of the UPA's forum selection clause against him in the Second Lawsuit. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27; *see also Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 829–30 (5th Cir. 2006) (applying collateral estoppel where prior dismissal was based on forum selection clause).

---

[5] Webb only sued DCP in the Second Lawsuit, though he has made no argument that adding DCP to the Second Lawsuit changes the collateral estoppel analysis. In any event, courts no longer require strict mutuality of parties. *See Trapnell*, 890 S.W.2d at 801. It is only necessary that the party against whom collateral estoppel is asserted be "a party or in privity with a party in the prior litigation." *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990); *see BP Auto.*, 517 S.W.3d at 200.

### B. Enforcement of Forum Selection Clause

In his second issue, Webb contends the trial court "erred by failing to rule that enforcement of the forum selection clause would be so punitive to Mr. Webb that he could not fairly exercise his rights to judicial review thereby meeting an exception under which refusal to enforce the forum selection clause was permissible." Webb asserts in part "it is counterintuitive, unfair, and unreasonable that Mr. Webb would have to defend himself in Arbitration in Dallas, Texas by proving the forgery, and then prosecute his claims for theft of commissions separately in New Jersey."[6]

We review the granting of a motion to dismiss based on a forum selection clause for an abuse of discretion. *Chandler Mgmt. Corp. v. First Specialty Ins. Corp.*, 452 S.W.3d 887, 891 (Tex. App.—Dallas 2014, no pet.). A trial court abuses its discretion if it refuses to enforce a forum selection clause unless the party opposing enforcement clearly shows (1) the clause is invalid because of fraud or overreaching; (2) enforcement would be unreasonable or unjust; (3) enforcement would contravene a strong public policy of the forum where the suit was brought; or (4) the selected forum would be seriously inconvenient for trial. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231–32 (Tex. 2008) (per curiam) (orig. proceeding). Thus, a party attempting to show that such a clause should not be enforced bears a heavy burden. *Id*. at 232. "Forum-selection clauses are generally enforceable and presumptively valid." *In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d 538, 540 (Tex. App.—Dallas 2011, orig. proceeding).

In complaining of Dallas arbitration and New Jersey lawsuits, Webb ignores his own objection to the Dallas arbitrator's jurisdiction. As appellees note, "Webb's 'unfair and unreasonable' complaint is really not about having multiple 'lawsuits' due to application of the

---

[6] Additionally, in his argument pertaining to his second issue, Webb asserts the forum selection clause is not enforceable against him in the Second Lawsuit because he is a "nonsignatory." We need not address those assertions in light of our conclusion that Webb is collaterally estopped from challenging the enforceability of the forum selection clause against him in the Second Lawsuit.

–10–

UPA's forum selection clause, but that he has to go to New Jersey for determinations of issues committed by contract to the courts." Webb's forum concerns highlight practical but all-too-common and not-at-all error-establishing issues in modern litigation. He may have to travel further than he would like and may have to work harder to get witnesses properly to the New Jersey courts, but Webb has made insufficient showing on any part of the relevant analysis. *See Lyon Fin. Servs.*, 257 S.W.3d at 231–32.

We conclude Webb has not met his "heavy burden" to clearly establish that enforcement of the forum selection clause would be unreasonable or unjust.[7]

## *C. Waiver*

In his third and fourth issues, Webb complains appellees waived collateral-estoppel- and forum-selection-defenses by encouraging the arbitrator to allow any court of "appropriate jurisdiction" to consider Webb's forgery claims and by bringing the arbitration in Dallas in the first place. Webb says this latter act requires the Texas Arbitration Act to govern, which in turn means that a Texas court "shall try the issue [whether there is an agreement to arbitrate] summarily." *See* CIV. PRAC. & REM. CODE § 171.023(a)–(b). We disagree.

"Waiver requires intent, either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (per curiam) (orig. proceeding). For waiver to be established by conduct, "that conduct must be unequivocally inconsistent with claiming a known right." *Van*

---

[7] *See Chandler Mgmt. Corp.*, 452 S.W.3d at 896 (rejecting argument that litigating in New York would be "so gravely difficult and inconvenient" that Texas party would be "deprive[d] . . . of its day in court" and describing procedural mechanism in Texas Rule of Civil Procedure 201.2 for compelling testimony of Texas witnesses for use in other states); *Bogart v. Star Bldg. Sys.*, No. 01-10-00446-CV, 2011 WL 846566, at *3 (Tex. App.—Houston [1st Dist.] March 10, 2011, pet. denied) (mem. op.) (fact that defendants and other witnesses were located in California did not preclude enforcement of forum selection clause designating Texas as forum); *First ATM, Inc. v. Onedoz, Inc.*, No. 03-08-00286-CV, 2009 WL 349164, at *2 (Tex. App.—Austin Feb. 13, 2009, no pet.) (mem. op.) (fact that both parties' witnesses were located in Washington did not demonstrate "unjust result" respecting forum selection clause requiring litigation in Texas); *see also Lyon*, 257 S.W.3d at 233–34 (rejecting argument by Texas party that Pennsylvania "is such an inconvenient forum that enforcing the forum-selection clause would produce an unjust result"); *In re Counsel Fin. Servs., L.L.C.*, No. 13-12-00151-CV, 2013 WL 3895317, at *9–10 (Tex. App.—Corpus Christi July 25, 2013, orig. proceeding) (mem. op.) ("the fact that two lawsuits might result from the application of a forum selection clause does not meet the standard for avoiding the forum selection provision").

*Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005); *see also Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) ("[F]or implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances."). Waiver can be implied from a party's unequivocal conduct, but not by inaction. *In re ADM Inv'r Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010) (orig. proceeding). A party waives a forum selection clause by substantially invoking the judicial process to the other party's detriment or prejudice. *Id*. There is a strong presumption against such waiver. *Id*. Merely participating in litigation does not categorically mean the party has invoked the judicial process so as to waive enforcement. *Id*.

Webb complains that appellees failed to challenge the arbitration order's "silence as to any specific forum," but this was not inconsistent with appellees' right to enforce the forum selection clause. The First Lawsuit and appeal confirmed New Jersey as the appropriate forum for Webb's court proceedings. *See Webb*, 2015 WL 3486175, at *1. Additionally, the TAA section Webb cites states, "A court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate. . . . If there is a substantial bona fide dispute as to whether an agreement to arbitrate exists, the court shall try the issue promptly and summarily." CIV. PRAC. & REM. CODE § 171.023(a)–(b). Webb seeks to bootstrap from the contractually required arbitration in Dallas to section 171.023 superseding the forum selection clause. He cites no authority to support that position and we have found none. Ample precedent supports the forum selection clause's superiority.[8]

---

[8] *See In re Brown*, 441 S.W.3d 405, 408 (Tex. App.—Dallas 2013, orig. proceeding) (because Texas was "not the proper forum for the dispute" pursuant to forum selection clause, mandatory venue provision in civil practice and remedies code pertaining to injunctions was not applicable); *In re JP Morgan Chase Bank, N.A.*, No. 05-17-01174-CV, 2018 WL 1312470, at *4 (Tex. App.—Dallas Mar. 14, 2018, orig. proceeding) (mem. op.) (concluding mandatory venue provision in Texas Property Code "applies to cases properly brought in Texas" and did not supersede parties' forum selection clause); *In re Omnicare Pharm. of Tex. 1, LP*, No. 05-17-00246-CV, 2017 WL 3766195, at *2 (Tex. App.—Dallas Aug. 31, 2017, orig. proceeding) (mem. op.) (rejecting argument that parties' Rule 11 agreement permitted venue in Dallas County to determine jurisdictional issue related to forum selection clause designating Delaware as exclusive forum for litigation).

We conclude appellees did not waive their defenses of collateral estoppel and forum selection by filing an arbitration action in Dallas or by agreeing that a court "with appropriate jurisdiction" could determine Webb's claims respecting the proper forum. *See McCarty*, 165 S.W.3d at 353 ("While waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right.").

### III. CONCLUSION

We decide against Webb on his four issues and affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

171258F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOHNNY E. WEBB III, Appellant

No. 05-17-01258-CV     V.

DIVERSEGY, LLC, DIVERSEGY
CONSULTANT PROGRAM, LLC,
LUCIEN J. TUJAGUE AND DOMINION
GAS HOLDINGS, LP, Appellees

On Appeal from the 95th District Court,
Dallas County, Texas
Trial Court Cause No. DC-16-14649.
Opinion delivered by Justice Carlyle.
Justices Bridges and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees DIVERSEGY, LLC, DIVERSEGY CONSULTANT
PROGRAM, LLC, LUCIEN J. TUJAGUE, AND DOMINION GAS HOLDINGS, LP recover
their costs of this appeal from appellant JOHNNY E. WEBB III.

Judgment entered this 13th day of March, 2019.