**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed August 23, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00399-CV

---

### IN RE MVP TERMINALLING, LLC, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-68933**

---

## MEMORANDUM OPINION

On July 19, 2021, relator MVP Terminalling, LLC filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, MVP asks this court to compel the Honorable Kyle Carter, presiding judge of the 125th District Court of Harris County, to (1) vacate his March 11, 2021 order denying MVP's plea in abatement and his July 14, 2021 order denying MVP's motion for clarification and reconsideration on its plea in abatement

and motion to stay; and (2) sign an order dismissing or abating the underlying suit. We grant the requested relief.

## BACKGROUND

MVP, a joint venture between Magellan Midstream Partners, L.P. and an affiliate of Valero Energy Corporation, is a refined-products terminalling company and the owner and operator of a marine terminal located along the Houston Ship Channel. McCarthy Building Companies, Inc. is a construction company. On April 23, 2018, MVP and McCarthy entered into the Major Construction Contract ("MCC"), under which McCarthy agreed to furnish construction and related services for MVP's Pasadena Terminal Phase 2 Project (the "Project") on the Houston Ship Channel. The Project included constructing new docks and dredging the basin of the new marine terminal to allow refinery tankers and other large vessels to dock at the terminal.

MVP retained Terracon Consultants, Inc. to perform a geotechnical analysis of the subsurface conditions at the Project and prepare a geotechnical engineering report documenting the Project's subsurface conditions for Phase 1 of the Project. The Phase 1 report was not updated for Phase 2. MVP gave the Phase 1 report to contractors, including RLB Contracting, Inc., to use and rely on in preparing bids for Phase 2. On May 23, 2018, McCarthy entered into a subcontract (the "Subcontract") with RLB for dredging work for the Project.

In August 2018, RLB started its dredging work under the Subcontract. When RLB reached minus 38 feet below sea level, it encountered substantially harder material. RLB began to have equipment problems and difficulty excavating the harder material. RLB believed that the subsurface condition it had encountered varied greatly from the information provided by MVP and McCarthy in the Phase 1

2

report. On July 22, 2019, RLB advised McCarthy that it had encountered a differing site condition as defined in the MCC and the Subcontract, entitling RLB to change orders for additional time and compensation.

RLB subsequently gave McCarthy formal notice of its claim for differing site conditions and a request for a change order. Because the Subcontract contained a "pass-through" provision, which provided that RLB would not be entitled to a change order unless McCarthy was entitled to the relief from MVP under the MCC, RLB also requested that McCarthy seek a similar change order from MVP. After McCarthy advised RLB that it was required to continue its work during the dispute and McCarthy would take action to achieve completion, RLB retained its own geotechnical engineer, which found that the material RLB encountered at minus 38-foot elevation was substantially different than the subsurface conditions represented in the Phase 1 report. On August 10, 2019, MVP denied the request for a change order.

On November 21, 2019, RLB gave notice of completion of its work and submitted an internally prepared calculation of its differing site condition claim. RLB also filed a mechanic's lien affidavit in the amount of $4,540,743.88 in Harris County to secure additional costs. In December 2019, McCarthy as principal, and Travelers Casualty and Surety Company, as surety, issued a bond to indemnify against and discharge the lien.

In September 2020, after RLB and McCarthy had issued multiple reports regarding the issue of the differing site conditions, MVP again denied RLB's claim based on McCarthy's denial of the existence of a differing site condition, denial of liability for RLB's claim, and purported failure to pursue timely RLB's pass-through claim.

On October 22, 2020, MVP sued McCarthy in the District Court for Tulsa County, Oklahoma, pursuant to a forum-selection clause in the MCC, asserting, among other claims, that McCarthy is liable for RLB's additional costs. Five days later, RLB filed its original petition, in Harris County, against MVP, alleging MVP is liable for RLB's additional costs. RLB amended its petition in the Texas case by adding McCarthy and Travelers as defendants on October 30, 2022.

McCarthy sent notice to MVP on November 4, 2020, that it was voiding the forum-selection clause. On November 17, 2020, McCarthy filed an original crossclaim in the Texas case against MVP for, among other claims, breach of contract based on MVP's failure to pay the additional costs. McCarthy also filed an original counterclaim against RLB in the Texas case, alleging causes of action related to RLB's claim for additional costs.

Two days later, McCarthy filed a motion to dismiss in the Oklahoma case, arguing that (1) the forum-selection clause in the MCC is voidable under the Texas "home-rule" statute found in section 272.001 of the Business and Commerce Code;[1] and (2) the case should further be dismissed under the doctrine of forum non conveniens.

On December 22, 2020, MVP filed a plea in abatement in the Texas case. MVP contended that RLB's and McCarthy's claims against MVP in the Texas case should be abated in favor of the Oklahoma case because (1) the Oklahoma court had dominant jurisdiction because the Oklahoma case was the first-filed; and (2) the forum-selection clause in the MCC required that suit be filed in the District Court in Tulsa, Oklahoma.

---

[1] *See* Tex. Bus. & Com Code Ann. § 272.001.

On January 14, 2021, the Oklahoma court denied McCarthy's motion to dismiss and ordered McCarthy to answer the lawsuit; McCarthy answered the Oklahoma case and asserted counterclaims against MVP on January 29, 2021.

Also, on January 14, 2021, MVP advised the trial court that the Oklahoma court had denied McCarthy's motion to dismiss. McCarthy and RLB each filed a response to MVP's plea in abatement, contending that the forum-selection clause is voidable under section 272.001, they had voided the forum-selection clause, and principles of comity did not require abatement of the Texas case.

On March 11, 2021, the trial court signed the order denying MVP's plea in abatement. MVP filed a motion for clarification and reconsideration. MVP asked the trial court to dismiss the Texas case based on RLB's and McCarthy's waiver of the right to object to the forum-selection clause, or alternatively abate the Texas case until entry of the final judgment in the Oklahoma case. MVP also filed a motion to stay, in which it advised the trial court that it intended to seek mandamus relief in the court of appeals and asked the trial court to stay the trial court proceedings until the appellate court had ruled on MVP's mandamus petition.[2] The trial court held a hearing on April 23, 2021, and signed the order denying MVP's motions on July 14, 2021.

MVP brings this mandamus proceeding, asking this court to compel the trial court to vacate its March 11, 2021 order denying MVP's plea in abatement and its July 14, 2021 order denying MVP's motion for clarification and reconsideration on its plea in abatement, and to sign an order dismissing or abating the underlying suit.

---

[2] MVP did not file a motion for temporary relief in this court requesting a stay of the proceedings in the trial court pending disposition of its petition for writ of mandamus.

## STANDARD OF REVIEW

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

Courts are to assess the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balancing depends in large measure on the circumstances presented, courts look to principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). Whether an appeal amounts to an adequate remedy depends heavily on the circumstances. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). Mandamus relief is available to enforce forum-selection clauses. *In re AutoNation*, 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding).

## ANALYSIS

MVP sued McCarthy in District Court in Tulsa, Oklahoma pursuant to the forum-selection clause in the MCC. The forum-selection clause is found in paragraph 47.7 of the MCC and reads as follows:

47.7 The parties acknowledge and agree that this contract has been made in Oklahoma, and that it shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of Oklahoma, without reference to its conflicts of law principles. The parties also acknowledge and agree that any action or proceeding arising out of or relating to this contract or the enforcement thereof shall be solely brought in the Tulsa County District Court or the Northern District Federal Court located in Tulsa, Oklahoma, and each of the parties irrevocably submits to the exclusive jurisdiction of that court in any such action or proceeding, waives any objection the party may nor hereafter have to venue or to convenience of forum, agrees that all claims in respect of such action or proceeding shall be heard and determined only in that court, and agrees not to bring any action or proceeding arising out of or relating to this contract or the enforcement hereof in any other court. The parties also acknowledge and agree that either or both of them may file a copy of this paragraph with any court as written evidence of the knowing, voluntary and bargained agreement between the parties irrevocably waiving any objections to venue or convenience of forum, or to personal or subject matter jurisdiction.[3]

The Subcontract contains the following "flow-down" provisions, under which MVP asserts that RLB agreed to be bound by forum-selection clause of the MCC:

**1.2** Subcontractor binds itself to McCarthy in performing its obligations hereunder to all terms and conditions of the Contract Documents, including, but not limited to, McCarthy's Contract with the Owner. McCarthy's Contract with the Owner (hereinafter "Owner Contract"), excluding financial data, and all other Contract Documents listed in Exhibit 2 will be made available to Subcontractor upon Subcontractor's written request. In the case of conflict between this Agreement and the other Contract Documents, Subcontractor shall be bound by the more stringent requirement as determined by McCarthy. If the Owner Contract has not been finalized with the Owner, McCarthy reserves the right to modify this Agreement based upon the finalized Owner Contract and Subcontractor consents to such modifications and agrees to be bound to the finalized Owner Contract.

---

[3] Modified text from all capital letters.

7

*     *     *

**11.1** This Agreement shall be governed by the law in effect in the place of the Project. Venue for any legal action hereunder shall be in either the place of the Project or the place of McCarthy set forth in Page 1 hereof; or for disputes involving the Owner described in Paragraph 11.2 herein, venue shall be in the place set forth in the Owner Contract.

**11.2** Any claim, dispute or controversy arising out of or relating to disputes involving the Owner (at the inception of the claim, dispute or controversy, or subsequently) shall be resolved pursuant to the claims and dispute resolution procedures set forth in the Owner Contract. The determination as to whether a claim, dispute or controversy arises from or relates to disputes involving the Owner shall be made by McCarthy at McCarthy's sole discretion. . . .

McCarthy and RLB both argue that, pursuant to section 272.001, they voided any potential applicability of the forum-selection clause. MVP asserts that neither McCarthy nor RLB established that section 272.001 applies to void the forum-selection clause in the MCC. Section 272.001 provides the following:

(a) This section applies only to a construction contract concerning real property located in this state.

(b) If a construction contract or an agreement collateral to or affecting the construction contract contains a provision making the contract or agreement or any conflict arising under the contract or agreement subject to another state's law, litigation in the courts of another state, or arbitration in another state, that provision is voidable by a party obligated by the contract or agreement to perform the work that is the subject of the construction contract.

Tex. Bus. & Com. Code § 272.001. Section 272.01 applies "only to a construction contract concerning real property located in this state." *Id.* § 272.001(a). If the section applies, a forum-selection clause making any conflict arising under the contract subject to litigation in the courts of another state "voidable by the party

8

obligated by the contract or agreement to perform the work that is the subject of the construction contract." *Id.* § 272.001(b).

MVP asserts that McCarthy and RLB irrevocably waived all "objections" to the forum-selection clause, including on the basis of section 272.001. Although McCarthy and RLB both argue that they have not waived their right to void the forum selection clause under section 272.001, each has different arguments, which we address below.

In its response to MVP's mandamus petition, RLB contends that the forum-selection clause in the MCC does not apply to RLB as a non-signatory to the MCC or to RLB's claims against MVP. More specifically, RLB argues that the MCC's forum-selection clause was not incorporated into the Subcontract through the flow-down provision. RLB has waived these arguments by not raising them in the trial court in response to MVP's plea in abatement. Instead, RLB asserted that it had voided the forum-selection clause under section 272.001 and the doctrine of comity is not applicable here. We need not address RLB's newly raised argument that the forum-selection clause was not incorporated into the Subcontract through the flow-down provision. *See In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d 538, 542 (Tex. App.—Dallas 2011, orig. proceeding) (refusing to address real party in interest's arguments in mandamus proceeding because it did not challenge relator's right to enforce forum-selection clause in the trial court in response to relator's motion to dismiss); *see also In re MHI P'ship, Ltd.*, No. 14-07-00851-CV, 2008 WL 2262157, at *8 (Tex. App.—Houston [14th Dist.] May 29, 2008, orig. proceeding) (mem. op.) (refusing to address real party in interest's arguments in mandamus proceeding because they did not raise arguments in trial

court in response to motion to compel arbitration). Therefore, we assume that the forum-selection clause in the MCC applies to the Subcontract.

RLB further maintains there was no contractual waiver of its section 272.001 right to void the forum-selection clause. RLB contends that the express language and public policy underlying section 272.001 make it "apparent on its face" that a waiver of the section 272.001 right is not enforceable. According to RLB, under MVP's position, "countless owners would include such waivers in their construction contracts and would require subcontractors, like RLB, to sign them as a condition precedent to being awarded any work on Texas projects," which would undermine the Legislature's purpose behind section 272.001.

In construing a statute, the court's objective is to determine and give effect to the Legislature's intent. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). The court relies on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). "Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 557 (Tex. 2022) (internal quotations marks & citations omitted). We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *see also Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) (explaining that, if statute's plain language is unambiguous, court interprets its plain meaning, presuming that the Legislature intended for each of word in statute to have purpose and that the Legislature

purposefully omitted words it did not include). The court may not impose its own judicial meaning on a statute by adding words not contained in the statute's language. *Silguero*, 579 S.W.3d at 59.

Section 272.001 makes the forum-selection clauses in construction contracts "voidable." *See* Tex. Bus. & Com. Code § 272.001(b). RLB cites to statutes from other states that make forum-selection and choice-of-law clauses in construction contracts void and unenforceable in support of its position that the Texas Legislature intended for section 272.001 to be non-waivable. RLB's reliance on these other statutes is misplaced because those statutes expressly deem forum-selection and choice-of-law clauses in construction contracts as "against public policy" and/or "void" and/or "unenforceable" rather than merely "voidable."[4]

The distinction between a void contract and a voidable contract is significant. *Cole v. Willie*, 464 S.W.3d 896, 899 (Tex. App.—Eastland 2015, pet. denied). The distinction is important because a void contract is a nullity from its inception, while a voidable contract continues in effect until repudiated. *Estate of Riefler*, 540 S.W.3d 626, 632 (Tex. App.—Amarillo 2017, no pet.); *see also Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 547 (Tex. 2016) (explaining that "a void act is one which is entirely null, not binding on either party, and not susceptible of ratification," and "a voidable act is one which is obligatory upon others until disaffirmed by the party with whom it originated and which may be subsequently ratified or confirmed") (internal quotation marks & citations omitted). Voidable means that a

---

[4] *See* Conn. Gen. Stat. § 42-158m; Fla. Stat. Ann. Ch. 47.025; 815 Ill. Comp. Stat. Ann. 665/10; Ind. Code § 32-28-3-17; Minn. Stat. § 337.10(1); Mont. Code Ann. § 28-2-2116(1); Neb. Rev. Stat. § 45-1209(2), (3); Nev. Rev. Stat. Ann. § 108.2453(2)(c), (d); N.M. Stat. Ann. § 57-28A-1(A)(1), (2); N.Y. Gen. Bus. Law § 757; Ohio Rev. Code Ann. § 4113.62(D)(1), (2); Okla. Stat. Ann. Tit. 15, § 15-821(B)(1); Or. Rev. Stat. § 701.640; Pa. Stat. Ann. tit. 73 § 514; Tenn. Code Ann. § 66-11-208(a); Va. Code Ann. § 8.01-262.1; Wis. Stat. Ann. § 779.135(2).

contract is valid and effective unless and until the party entitled to avoid it takes affirmative steps to disaffirm it. *Neese v. Lyon*, 479 S.W.3d 368, 378 (Tex. App.—Dallas 2015, no pet.). Therefore, under section 272.001, a forum-selection clause is valid until a party obligated under the contract exercises its right to void the provision.

RLB contends that the Legislature indicated its intent to grant a non-waivable right by making forum-selection clauses in construction contracts requiring litigation in another forum voidable and that contractual waiver of the right to void such clauses would be against Texas public policy. RLB relies on legislative analysis on section 272.001 observing that Texas has "provided protection for general contractors and subcontractors who contract with entities from other states" and that "projects constructed in Texas will be decided in Texas, under Texas law." Senate Res. Ctr., Bill Analysis, Tex. S. B. 807, 85th Leg. R.S. (April 18, 2017). Generally, however, we do not resort to extrinsic aids, such as legislative history, to interpret a clear and unambiguous statute because the statute's plain language is the surest guide to the Legislature's intent. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). In any event, we do not dispute that the Legislature intended to protect contractors. But insofar as forum-selection clauses are concerned, the Legislature clearly did not intend to void them in all construction contracts or prohibit contractual waivers of the right to void them.

Texas has a strong public policy favoring freedom of contract. *James Constr. Grp., LLC v. Westlake Chem. Corp.*, No. 20-0079, 2022 WL 1594955, at *7 (Tex. May 20, 2022); *see also Chalker Energy Partners III, LLC v. Le Norman Operating, LLC*, 595 S.W.3d 668, 673 (Tex. 2020) ("Texas's strong public policy favoring freedom of contract is firmly embedded in our jurisprudence.") (internal quotation

marks and citation omitted). "As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008) (internal quotation marks and citation omitted). The Legislature determines public policy through the statutes it passes. *Id.* at 665.

Absent compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered. *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016); *see also Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007) ("Freedom of contract allows parties to bargain for mutually agreeable terms and allocate risks as they see fit."); *St. Louis Sw. Ry. Co. of Tex. v. Griffin*, 171 S.W. 703, 704 (Tex. 1914) ("The citizen has the liberty of contract as a natural right which is beyond the power of the government to take from him. The liberty to make contracts includes the corresponding right to refuse to accept a contract or to assume such liability as may be proposed.").

It is exactly the fact that the Legislature chose to make forum-selection clauses in construction contracts "voidable" rather than "against public policy," "void," or "unenforceable," which supports the Legislature's intent that the right to void such clauses can be contractually waived. We now turn to McCarthy's argument that it did not waive its right to void the forum-selection clause under the MCC.

McCarthy does not dispute that constitutional and statutory rights may be waived. Indeed, McCarthy acknowledges that it "waive[d] any objection . . . to venue or to convenience of forum" in paragraph 47.7 of the MCC, but maintains that it did not waive its right to void the forum-selection clause under section 272.001.

The interpretation of an unambiguous contract is a question of law for the court. *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 709 (Tex. 2021). If a contract

13

has a certain and definite meaning, the contract is unambiguous, and we will construe it as a matter of law. *Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 690 (Tex. 2022). The fact that parties may advance different interpretations of a contract does not make the contract ambiguous. *Id.*

When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (per curiam); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). The court generally gives terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. *Farmers Grp., Inc.*, 620 S.W.3d 709. The court must examine and consider the entire writing in effort to harmonize all provisions in a contract so that none will be rendered meaningless. *Nettye Engler Energy, LP*, 639 S.W.3d at 690; *Sundown Energy LP*, 622 S.W.3d at 888. The court must construe words within the contractual context as a whole, not in isolation. *Northland Indus., Inc. v. Kouba*, 620 S.W.3d 411, 415 (Tex. 2020).

McCarthy's position would render other portions of the paragraph 47.7 in the MCC meaningless. McCarthy admits that it waived any "objection" to venue or convenience of forum. Significantly, however, McCarthy "irrevocably submit[ted] to the exclusive jurisdiction" of the Tulsa County District Court or the Northern District Federal Court located in Tulsa, Oklahoma; "agree[d] that all claims in respect of such action or proceeding shall be heard and determined only in" the Tulsa County District Court or the Northern District Federal Court located in Tulsa, Oklahoma; and "agree[d] not to bring any action or proceeding arising out of or relating to this contract or the enforcement hereof in any other court."

14

It is not inconsistent for McCarthy to have waived any objection to venue or convenience of forum while also agreeing that claims arising out of or relating to the MCC be brought in the Tulsa County District Court or the Northern District Federal Court located in Tulsa, Oklahoma. We must harmonize all provisions in paragraph 47.7 of the MCC so that none will be rendered meaningless. *See Nettye Engler Energy, LP*, 639 S.W.3d at 690; *Sundown Energy LP*, 622 S.W.3d at 888. Moreover, we cannot rewrite a contract or add to its language under the guise of interpreting it. *Abdullatif v. Choudhri*, 561 S.W.3d 590, 602 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). McCarthy bargained freely to waive its section 272.001-right to void the forum-selection clause in the MCC.

As addressed above, RLB waived any argument that the MCC's forum-selection clause was not incorporated into the Subcontract through the flow-down provision. Having concluded that McCarthy contractually waived the right to void the forum-selection clause in the MCC and applying the same analysis, we also conclude RLB similarly waived the right to void the forum-selection clause through the Subcontract's flow-down provision.[5]

We conclude that RLB and McCarthy contractually waived their respective rights under section 272.001 to void the forum-selection clause and the trial court abused its discretion in concluding otherwise. We must now determine whether MVP has an adequate remedy by appeal.

A "motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit." *Deep Water Slender Wells, Ltd. v. Shell Int'l Expl. & Prod., Inc.*, 234 S.W.3d 679, 687

---

[5] Given our disposition on contractual waiver, we need not address whether comity required the trial court to abate or dismiss the Texas case in favor of the first-filed Oklahoma case.

(Tex. App.—Houston [14th Dist.] 2007, pet. denied). MVP did not file a motion to dismiss based on the forum-selection clause or request dismissal of RLB's and McCarthy's claims in the Texas case. Instead, MVP filed a plea in abatement specifically requesting that the trial court abate RLB's and McCarthy's claims against MVP in the Texas case based on the forum-selection clause until the Oklahoma case has been resolved. However, MVP requested that the trial court dismiss the Texas case in its motion for clarification and reconsideration of its plea in abatement. "[W]e look to the substance of a motion to determine the relief sought, not merely its title." *Surgitek, Bristol Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999).

MVP sought the enforcement of the forum-selection clause and asked that the Texas case be dismissed. Mandamus relief is available to enforce forum-selection agreements because there is no adequate remedy by appeal when a trial court abuses its discretion by refusing to enforce a valid forum-selection clause that covers the dispute. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 674 (Tex. 2009) (orig. proceeding) (per curiam). Therefore, MVP lacks an adequate remedy by appeal and is entitled to having the Texas case dismissed.

## CONCLUSION

Having determined that the trial court abused its discretion and MVP does not have an adequate remedy by appeal, we grant MVP's requested relief. We direct the trial court to (1) issue a written order vacating its March 11, 2021 order denying MVP's plea in abatement and its July 14, 2021 order denying MVP's motion for clarification and reconsideration on its plea in abatement and motion to stay and (2) issue an order dismissing the Texas case. We are confident the trial court will

16

act in accordance with this opinion and the writ will issue only if the court fails to do so.

PER CURIAM

Panel consists of Justices Wise, Jewell, and Spain.